In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00133-CR


______________________________




DELIO M. BARRIOS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 76th Judicial District Court


Morris County, Texas


Trial Court No. 9225




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Delio M. Barrios was convicted by a Morris County jury of money laundering (Tex. Penal
Code Ann. § 34.02 (Vernon Supp. 2007)), receiving a sentence of fifteen years' incarceration and
a fine of $10,000.00. He raises eleven points of error in this appeal. After thoroughly examining
the record and applicable laws, and following presentation of oral argument by the parties, we affirm.

Background

 On June 7, 2005, State Trooper Joe Hogue observed a van driven by Barrios make an unsafe
lane change on Interstate 30, forcing the driver of a trailing truck to have to apply his brakes to avoid
a collision; Hogue also observed that the driver of the van had failed to signal a lane change. 

 Hogue pulled over Barrios's van and engaged Barrios, who apparently was then conversant
in English. At that time, Barrios related that he was returning to Dallas from Nashville, Tennessee,
where he had been engaged in painting for two days; he indicated that the van was being returned
to Barrios's friend, Filadelfo Gonzalez, who was the owner and insurer of the van. Barrios did not
have a driver's license; he gave Hogue a Sam's Club membership card as photographic identification. 
The proof of insurance form Barrios provided (showing that the effective date of the insurance was
May 18, 2005, about three weeks before the traffic stop) did not list Barrios among the authorized
insured drivers of the vehicle. Although the title to the vehicle had not yet been transferred to
Gonzalez, Barrios provided a bill of sale which indicated that the van had been purchased by
Gonzalez within a "few days" before the traffic stop. Hogue observed that he had noticed from his
previous experience that drug traffickers will often use newly-purchased vehicles so if contraband
is discovered, the trafficker can profess lack of knowledge of the existence of contraband in the
vehicle, maintaining that the drugs must have been left in the vehicle by a prior owner. Therefore,
these circumstances aroused Hogue's suspicions. Further, Hogue noticed that there was no paint on
Barrios's fingernails or clothes; in his experience, this was inconsistent with the appearance of
painters. Hogue also thought Barrios seemed unduly nervous, an apparent anxiousness which did
not diminish when Hogue ultimately told him he would only be giving Barrios warnings for the
traffic infractions. 

 Based on these observations and the suspicions which they generated, Hogue asked for
Barrios's consent to search the vehicle, a consent which was granted. Upon a search of the vehicle,
Hogue observed that the paint brushes and painting equipment in the van were all unused; in a duffel
bag, Hogue found one change of clothes (not evidently painter's clothes). 

 During the search, Hogue noticed some screws which had been "tampered with" on one of
the interior side panels of the van. Hogue also noticed pink housing insulation within an air
conditioner vent near the suspect screws and panel. Hogue testified that with the insulation blocking
the vent, the air conditioner would not produce cool air at that spot. Using an electric drill or
screwdriver, Hogue removed the panel and found two bricks of cash held together by duct tape, each
brick containing $18,000.00 and each marked "1-8-0-0-0." At the time the money was found,
Barrios indicated at one point that he had earned it painting and at another point in time, he said that
the money was from the proceeds of the sale of an automobile.

 A canine unit was summoned to the vehicle; the dog alerted on the area where the money had
been found and exited the vehicle with pink insulation in his mouth or stuck on his nose. State
Trooper Brett Dalme, to whom the dog, Zymbal, was assigned, testified that Zymbal was trained to
smell out heroin, cocaine, marihuana, and methamphetamine, but not money. Dalme ventured that
Zymbal would not have alerted on the money unless that money had been "laced" with one of the
four mentioned drugs. Dalme further testified that when he turned Zymbal loose in the van, the dog
gave an "aggressive alert" near the panel beneath which Hogue had previously located the money
bricks. Dalme said that this alert by the canine indicated some form of one of the four drugs Zymbal
was trained to detect had been located in the area. 

 State Trooper Darren Lubbe testified that he knew of Filadelfo Gonzalez, listed as the owner
and insurer of the van, by reputation as a "known cocaine trafficker." 

 Barrios took the stand in his defense. At trial, Barrios said the money found in the van was
his, that he had earned it over several years, and that he had planned to use the money to bring his
parents into the United States from Guatemala. 

Point 1) Legal Sufficiency of the Evidence

 In his first point of error, Barrios claims that the evidence was legally insufficient to sustain
his conviction. The indictment charged that Barrios did "knowingly possess and transport proceeds
of criminal activity, to wit: to possess and deliver controlled substances as prohibited by
Chapter 481 [of the Texas Health and Safety Code]." (1) In reviewing the legal sufficiency of the
evidence, we view all of the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

 In Lee v. State, (2) a law enforcement officer found a duffel bag in the vehicle filled with a large
amount of cash. Lee's codefendant told the officer that Lee obtained the money by selling the drug
"Ecstasy." Lee was convicted of money laundering; he and the codefendant (who was a passenger
in the car) gave conflicting stories about the origin of the money; the other person in the car told
officers that Lee got the money selling drugs. Police found approximately $190,000.00 in a duffel
bag; a drug dog later alerted on the bag; and in the car, police found a writing tablet with "Dallas
190" written on it. Although the Dallas Court of Appeals found that the evidence was legally
sufficient, it reversed the conviction on another ground. See Lee, 143 S.W.3d at 570-71.

 The Amarillo Court of Appeals analyzed a situation with facts similar to those in Barrios's
case in an unpublished case. (3) In that circumstance, Adam Granado was found with $6,100.00 in cash
in his vehicle; officers testified that possession of marihuana with a street value of $6,100.00 would
constitute a felony. Granado claimed that the source of the money was the sale of a vehicle but was
unable to provide documentation of the sale which he alleged. Officers further testified that the
currency emitted a strong odor of marihuana and was packaged in a manner consistent with the
proceeds of a drug transaction. A drug dog also alerted to the presence of drugs, including
marihuana, and the dog alerted on the currency which was found. Although the evidence of the
currency's origin was circumstantial, the evidence was sufficient to prove Granado's guilt. 

 Reviewing the evidence in the light most favorable to the jury's verdict, there was evidence
that Barrios knowingly concealed $36,000.00 inside the van he was driving: Barrios never denied
knowing the money was there. Trooper Hogue testified to things that made him suspicious of
Barrios: that despite Barrios's claim to have spent two days painting in Nashville, Barrios looked
remarkably clean, with no residue of paint on his person, and his appearance did not seem to indicate
having spent two days painting. Hogue thought it did not make economic sense for Barrios to have
driven from Dallas, Texas, to Nashville, Tennessee, to paint for two days and then drive back. The
painting equipment in the van did not appear to have been used or opened. Barrios appeared unduly
nervous and his anxiety level did not substantially diminish when Hogue informed him that he would
receive only a traffic warning rather than a ticket. Hogue saw a duffel bag with a change of clothes,
but none that looked to have been used in painting. Hogue also said that in his experience, it was
common for drug traffickers to employ newly- purchased and -insured vehicles on the theory that
they could disavow knowledge of any contraband, were it to be found. Hogue also testified that
about 4.4 pounds of cocaine could be purchased with $36,000.00. 

 A reasonable jury could have found the charged elements of money laundering beyond a
reasonable doubt. The evidence was legally sufficient to support the jury's verdict; we overrule the
first point of error. 

Point 2) Factual Sufficiency of the Evidence

 Barrios's second point claims that the evidence is factually insufficient to support the jury's
finding of guilt. In reviewing the factual sufficiency of the evidence, we view all the evidence, but
do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is
so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly
wrong or manifestly unjust. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007);
Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404,
414-15 (Tex. Crim. App. 2006). In a factual sufficiency review, we are to afford "due deference"
to a jury's determinations. Marshall, 210 S.W.3d at 625. Circumstantial evidence is an effective and
accepted means to prove that certain money is the proceeds of criminal activity. See State v.
$11,014.00, 820 S.W.2d 783, 784 (Tex. 1991). Circumstantial evidence is "direct proof of a
secondary fact which, by logical inference, demonstrates the ultimate fact to be proven." Taylor v.
State, 684 S.W.2d 682, 684 (Tex. Crim. App. 1984) (en banc). Every fact and piece of evidence
need not, however, point independently to the defendant's guilt. See Conner v. State, 67 S.W.3d 192,
197 (Tex. Crim. App. 2001). A conviction may rest on the cumulative strength of all incriminating
circumstances. Id. 

 We have summarized the evidence above. Barrios took the stand to claim the money
belonged to him and that he had earned it legitimately. Barrios's attorney, through cross-examination
of State witnesses, propounded the theory that none of them had fairly asked Barrios about the source
of the money; Barrios initially made this claim in his testimony, then said he had told the troopers
he had earned the money and saved it, and finally said that it was the proceeds of the sale of a
Tacoma truck for $6,000.00. Barrios denied the money had come from any illegal activity. 

 Conflicts in the evidence are to be resolved by the jury. In doing so, it may accept one
version of facts and reject another or reject any of a witness's testimony. Penagraph v. State, 623
S.W.2d 341 (Tex. Crim. App. [Panel Op.] 1981). In so doing, it is the jury's job to judge the
credibility of the witnesses and the weight to be given their testimony, and it may resolve or
reconcile conflicts in the testimony, accepting or rejecting such portions thereof as it sees fit. Banks
v. State, 510 S.W.2d 592 (Tex. Crim. App. 1974). 

 It is true the evidence supporting Barrios's conviction was generally circumstantial. 
However, it cannot be said that the evidence supporting the verdict is so weak or so outweighed by
the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or
manifestly unjust. Accordingly, we hold the evidence was factually sufficient. Therefore, we
overrule Barrios's second point of error. 

Point 3) Prosecutorial Misconduct in Closing Argument at Guilt/Innocence Phase

 In his third point of error, Barrios complains of comments made by the State during closing
arguments at the guilt/innocence phase of the trial. Barrios lists nine comments made by the State
which he indicates were outside the bounds of proper argument; he generally complains the
comments made in argument, "solely and in combination," were so prejudicial and inflammatory as
to taint the entire jury process. Notwithstanding the fact that he has raised a multifarious point of
error, (4) Barrios failed to preserve any of his complaints for appeal. To preserve error for appellate
review, (1) the complaining party must make a timely objection specifying the grounds for the
objection, if the grounds are not apparent from the context; (2) the objection must be made at the
earliest possible opportunity; and (3) the complaining party must obtain an adverse ruling from the
trial court. Dixon v. State, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998). Barrios objected to only one
of the comments about which he now complains. When, in the State's rebuttal closing argument, the
State said, "We just have to rely on that officer's word, and I'll stand with him on that. And if you
don't believe [Trooper] Joe Hogue . . . ." Barrios's attorney objected to "the district attorney aligning
himself. Mr. Cowan [the State's attorney] is an honorable person, and I would object to him
bolstering the witness to his stature." (5) The trial court said, "Again, this is argument on the part of
the State's attorney." The complaining party must obtain an adverse ruling from the trial court. 
Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); DeRusse v. State, 579 S.W.2d 224
(Tex. Crim. App. [Panel Op.] 1979). Barrios did not obtain a ruling from the trial court. No error
is preserved and we overrule this contention. 

Point 4) Prosecutorial Misconduct in Closing Argument at Sentencing Phase 

 Akin to his previous complaint, Barrios next maintains that statements made by the State
during closing arguments at the punishment phase of trial are the basis for error. As with the section
attacking the guilt/innocence argument, Barrios's brief quotes numerous statements by the State, then
makes somewhat general arguments about the alleged impropriety of the statements. Since Barrios
did lodge some objections to these statements at trial, to the extent we are able to discern his
appellate complaint, we will address this point of error. (6)

 The Texas Court of Criminal Appeals has acknowledged four proper areas of jury argument: 
"(1) summation of the evidence presented at trial; (2) reasonable deduction drawn from that
evidence; (3) answer to the opposing counsel's argument; or (4) a plea for law enforcement." 
Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000); Alejandro, 473 S.W.2d at 231-32
(citations omitted). This Court has recognized a fifth area proper for jury argument, the trial court's
charge to the jury. Bessey v. State, 199 S.W.3d 546, 554 (Tex. App.--Texarkana 2006), aff'd on
other grounds, No. PD-1401-06 (Tex. Crim. App. Nov. 14, 2007), available at http://www.cca.
courts.state.tx.us/opinions/HTMLopinionInfo.asp?OpinionID=16201.

 Before reversible error occurs from improper jury argument, the statements must be "so
extreme, manifestly improper, or inject new and harmful facts into the case that they deprive the
defendant of a fair and impartial trial." McGee v. State, 774 S.W.2d 229, 238 (Tex. Crim. App.
1989). In determining whether the comments by the prosecutor constitute reversible error, we must
view the allegedly improper argument in light of the facts adduced at trial and in the context of the
entire argument. Id. at 239. With regard to jury argument to which an appellant did not object, that
failure to object waives the error unless the arguments were so prejudicial that no instruction could
cure the harm. Id. at 240. However, with regard to the argument to which appellant objected, where
a trial court overrules an objection to improper argument, it places "the stamp of judicial approval"
on the argument, magnifying the harm. Good v. State, 723 S.W.2d 734, 738 (Tex. Crim. App. 1986). 
It goes without saying, though, that the complaining party must still adequately preserve any asserted
error with timely, proper objections. See Jackson v. State, 992 S.W.2d 469, 480 n.12 (Tex. Crim.
App. 1999). 

 We will only address arguments to which Barrios lodged some form of objection. First,
Barrios complains of the following:

 [By the State]: Now, you ever wonder why . . . we have to have so many
sheriff's deputies and patrol cars; how many houses gets [sic] broken into; how many
forged checks businesses receive; how many people are injured and maimed every
day; how many families are destroyed; how many people wonder, "What happened
to my children? I was [a] good parent. Look at my kid, he's hitting that crack pipe."


 It's because people like Delio Barrios, professional drug traffickers, bring
dope into this country.


 Now, I appreciate his wife, this lady that came, and the fact that she's got a
five-year-old daughter. I represent the five-year-old daughters in this county, and I'm
here to tell you the evidence in this case cannot support a probated sentence
. . . there's only one verdict that will send a message to people. 


 I don't care what term of years you would give. If you were to give eight
years, ten years, 12 years, that means nothing in this case. That's easy time. 

 

 The Judge has instructed you here in your verdict form right down here on the
bottom of page 3, it says, "Under the law applicable in this case, the defendant, if
sentenced to a term of imprisonment, will not become eligible for parole until the
actual time served equals one fourth of the sentence." 

 

 He'll be eligible for parole after one fourth of the sentence. If were you [sic]
to give ten years, that's two and a half years he'll be eligible for parole. 


 How can you send a message? There's a telephone out there in that lobby on
that wall, and what you do here is important. All these other dozens of drug cases,
all these other dozens of drug laundering cases throughout East Texas --


 Barrios objected to "improper jury argument"; the trial court sustained the objection and
instructed the jury to disregard the comment regarding the drug issues. The trial court then denied
Barrios's motion for a mistrial. In his brief, Barrios does not specify exactly what error we should
find in the above passage. Rather, he quotes almost a page-length section of the State's argument,
to which he only objected on the ground of "improper jury argument." He does not explain what
specific part of the State's argument was improper or why he believes it to have been improper. 
Some of the quoted argument could qualify as a plea for law enforcement; some addresses part of
the court's charge; some asks the jury to "send a message," which may fall within or without the
limitations of a plea for law enforcement. (7) Barrios has failed to articulate specifically what part of
the State's argument upon which his point of error is based. 

 Barrios also complains of his overruled objection to the State's statement, "That van was
traveling back and forth down Interstate 30, and just by the grace of God, one highway patrolman
who was extremely diligent." This is a reference to a summation of evidence adduced at trial or to
an inference which can be deduced from the evidence presented, a proper area of argument.

 In the State's closing rebuttal, Barrios objected to several comments which made reference
to Barrios's supposed role in the illegal narcotics problem of Morris County. Among these were: 
"Poor Delio. I'm not trying to blame Delio for all the drug problems in Morris County. I'm blaming
Delio and people like Delio, and we're going to send a message to people like Delio." Barrios
objected, claiming this was "improper jury argument to send a message to other people who are
unknown." The trial court overruled the objection. Reviewing the whole of the State's argument as
taken in its entirety, we find this to have been a proper plea for law enforcement.

 The State next said, "What this Court does and what this jury does affects everybody else,
and the message that you can send is that you want to stand up and to stop this flow of drugs. All
that it takes --." Barrios lodged an objection that "it's improper jury argument about stopping the
flow of drugs. That's not what this case is about." We cannot disagree with the trial court's
overruling of the objection; although Barrios's conviction was for money laundering, the State's
theory of prosecution, supported by numerous evidentiary references throughout the guilt/innocence
phase, pointed to drug trafficking as the source of the money hidden in the van. Thus, it could be
construed the State was referring to evidence which had been offered at trial. 

 Later, in its closing rebuttal, the State said, "Give him his flight papers. The only way that
justice can be done in the case is for Delio Barrios to be assessed 20 years and a $10,000 fine. He
is old enough to know better. He's a professional drug trafficker, and he got caught. Now that he's
caught, it's time for him to be punished." Barrios objected, "I'm going to object to him classifying --
this is a case about money laundering, not about anything else." As with the previous comment, the
flow of drugs and money was the nexus of the criminal activity the State alleged and needed to prove
in order to meet the elements of money laundering. We find no error in the trial court having
overruled this objection.

 Barrios objected to the State's statement that, "All that it takes for evil to triumph is for good
men and women to do nothing. This is your one day, your one hour, that you have to speak up and
make --." However, the trial court answered the objection by saying, "This is an argument presented
by the State." Barrios did not obtain an adverse ruling, and thereby failed to preserve any complaint
for appellate review. 

 Finally, the State said, "Perhaps this former federal prosecutor that he hired to come up here
and defend him believes that trafficking in drugs for money is not evil." Barrios objected to
"improper jury argument" to "putting Counsel in the jury argument." The trial court sustained this
objection and granted Barrios's request that the jury be instructed to disregard; the court then denied
Barrios's request for a mistrial. When the trial court sustains an objection to jury argument and
instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue on appeal
becomes whether the trial court abused its discretion in denying the requested mistrial. Hawkins v.
State, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004). As with other matters in which abuse of
discretion is the issue, we will uphold the trial court's ruling if it was within the "zone of reasonable
disagreement." Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004) (citing Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). The Hawkins court approved
the balancing of three factors for this kind of situation: (1) the severity of the misconduct (i.e., its
prejudicial effect on the jury), (2) the curative measures which were taken, and (3) the certainty of
the punishment which would have been assessed absent the misconduct. Hawkins, 135 S.W.3d at
77. Barrios does not address any of this analysis in his brief. Taken in context of the whole
argument, we do not find the potential prejudicial impact on the jury to have been significant nor
would we characterize the State's misconduct, to the extent any existed, as severe. The trial court's
instruction to disregard is presumed effective and generally cures any error. Dinkins v. State, 894
S.W.2d 330, 357 (Tex. Crim. App. 1995); Losada v. State, 721 S.W.2d 305, 314 (Tex. Crim. App.
2006); Nielsen v. State, 836 S.W.2d 245, 249 (Tex. App.--Texarkana 1992, pet. ref'd). An
instruction to disregard the argument generally cures any error. Castillo v. State, 939 S.W.2d 754,
762 (Tex. App.--Houston [14th Dist.] 1997, pet. ref'd). As for the certainty of the same punishment
being assessed absent the State's misconduct, it is true Barrios had no prior criminal history. 
However, he received less than the maximum amount of punishment possible. He admitted to being
in the country illegally and indicated that he planned to use the money which was found to illegally
bring his parents to America. As he makes no attempt to argue why he would have received a lower
sentence, and reviewing the record as a whole, we find the trial court was within its discretion to
deny Barrios's request for a mistrial. His fourth point of error is overruled. 

Point 5) Claim of Sentencing Error as Beyond the Scope of Permitted Punishment 

 Barrios's fifth point of error claims his fifteen-year sentence, in the punishment range of a
second-degree felony, was inappropriate. He claims that money laundering with funds of more than
$20,000.00 but less than $100,000.00 is a third-degree felony. See generally Tex. Penal Code
Ann. §§ 12.33,12.34 (Vernon 2003), § 34.02. Barrios was arrested on June 7, 2005, before the
effective change in the law. Money laundering in the stated amount of funds range was changed
from a second- to third-degree felony as of September 1, 2005; the proper sentencing standard was
applied. See Tex. Penal Code Ann. § 34.02(e)(2). (8) We overrule this point of error. 

Points 6-9) Denial of Barrios's Motion to Suppress

 In four points of error, Barrios claims the trial court erred in denying his motion to suppress
evidence obtained as a result of Trooper Hogue's traffic stop and subsequent investigation. Barrios
claims that (1) the initial traffic stop was unconstitutional; (2) after the traffic stop, Barrios was
illegally detained; (3) Hogue's search of the van was without a warrant and not permitted by any of
the exceptions to the Fourth Amendment's search warrant requirement; and (4) even if Barrios had
given Hogue consent to search the van, Hogue's search exceeded the scope of the consent as given. 
We find it expedient to address these contentions of error together. 

 A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. 
Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). In reviewing a trial court's ruling
on a motion to suppress, appellate courts must give great deference to the trial court's findings of
historical facts as long as the record supports the findings. Torres v. State, 182 S.W.3d 899, 902
(Tex. Crim. App. 2005); Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App. 1997). Because the trial
court is the exclusive fact-finder, the appellate court reviews evidence adduced at the suppression
hearing in the light most favorable to the trial court's ruling and sustains the trial court's ruling if it
is reasonably correct on any theory of law applicable to the case. Carmouche v. State, 10 S.W.3d
323, 327-28 (Tex. Crim. App. 2000). 

 At the suppression hearing, Trooper Hogue testified that he pulled Barrios over after
witnessing Barrios commit two traffic violations: failing to signal a lane change and making said
lane change unsafely. Hogue said that as he was turning around on Interstate 30, he saw Barrios's
westbound van make an "abrupt movement from the inside lane to the outside lane so close in front
of a truck tractor that I saw the truck tractor apply his brakes." When changing lanes on a multi-lane
road, a driver cannot change lanes unless such can be accomplished "safely." Tex. Transp. Code
Ann. § 545.060 (Vernon 1999). Further, a driver is required to provide a signal before changing
lanes. Tex. Transp. Code Ann. § 545.104 (Vernon 1999). Violation of a traffic law in an officer's
presence is sufficient authority for an initial stop. Armitage v. State, 637 S.W.2d 936, 939 (Tex.
Crim. App. 1982); Griffin v. State, 54 S.W.3d 820, 822-23 (Tex. App.--Texarkana 2001, pet. ref'd). 
At a suppression hearing, the trial court observes the testimony and demeanor of the witnesses and
is in a better position than the appellate court to judge the credibility of the witnesses. See Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (citing Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990)). Therefore, we do not engage in our own factual review. Rather, we view
the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial
court's ruling and sustain the ruling if it is sufficiently supported by the evidence and is correct on
any theory of law applicable to the case. Id. It was within the trial court's discretion to believe
Hogue's explanation for having stopped Barrios and to find that Hogue had a legitimate reason to
conduct a traffic stop. 

 As pertains to Barrios's claim that the stop amounted to an illegal detention, we find the law
does not support this argument. An officer may 1) require the detainee to identify himself and
produce a valid driver's license and proof of insurance, and 2) detain the individual for a period of
time reasonably sufficient to check for outstanding warrants. Kothe v. State, 152 S.W.3d 54, 63-64
(Tex. Crim. App. 2004); Strauss v. State, 121 S.W.3d 486, 491 (Tex. App.--Amarillo 2003, pet.
ref'd). He may also ask the driver if he possesses illegal contraband and solicit voluntary consent
to search the vehicle once the purpose of a traffic stop has been effectuated. Strauss, 121 S.W.3d
at 491; James v. State, 102 S.W.3d 162, 172-73 (Tex. App.--Fort Worth 2003, pet. ref'd). 
Requesting such consent is not an unlawful seizure, and neither probable cause nor reasonable
suspicion is required for the officer to ask. James, 102 S.W.3d at 173. Nor must the officer tell the
individual that he is free to leave after the purpose of the stop is completed. Vargas v. State, 18
S.W.3d 247, 252 n.1 (Tex. App.--Waco 2000, pet. ref'd). (9)

 Hogue's vehicle was equipped with a videotape recorder. The videotaped transaction shows
Hogue pulling the van over and the interview with Barrios, as well as Hogue's search of the van. The
videotape contains no audio portion; Hogue testified that he failed to check the battery on his
microphone (which transmits the sound to the camera) at the beginning of his shift on the day in
question. Hogue admitted this was a mistake on his part. While the State played the videotape for
the jury, Hogue provided narration. From this recitation in the reporter's record and watching the
videotape, we are able to ascertain that no more than ten minutes intervened between the beginning
of the traffic stop and Barrios's consent to search the van. In light of the circumstances, especially
Barrios's lack of a driver's license and his not having been listed as among the authorized insured
drivers of the van, we find this was a reasonable amount of time for Hogue to have detained and
questioned Barrios and then to have requested a consent to search the vehicle. 

 We disagree with Barrios's contention that the traffic stop was unconstitutional, warrantless,
and not within any of the exceptions to the requirement for a warrant. A search conducted with the
consent of the suspect is an exception to the Fourth Amendment's warrant requirement. Schneckloth
v. Bustamonte, 412 U.S. 218, 219 (1973) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). 
Barrios does not assert that his consent was not voluntarily given. We find that the traffic stop was
constitutional and did not amount to an illegal detention and that Barrios's consent obviated the need
to obtain a warrant for the search of the van. We overrule these points of error.

 Barrios claims that when Trooper Hogue used a drill to remove a panel inside the van,
thereby revealing two bricks of cash, each containing $18,000.00, such act exceeded the scope of any
consent given by Barrios. A suspect may limit the scope of the search to which he consents. Florida
v. Jimeno, 500 U.S. 248, 251 (1991); Simpson, 29 S.W.3d at 330. The scope of the consent is
defined by what a typical reasonable person would have understood by the exchange between the
officer and the suspect. Simpson, 29 S.W.3d at 330. Absent an explicit limitation by the person,
consent to search inside a vehicle includes consent to search containers that could contain the object
of the search. Jimeno, 500 U.S. at 251; Vargas, 18 S.W.3d at 254. Hogue said he saw pink housing
insulation within an air-conditioner vent and that some of the screws in the area seemed to have been
tampered with or damaged. He testified that this raised his suspicions; thus, it was logical for him
to remove the panel. Further, Barrios points to nothing in the record to indicate he ever limited the
scope of his consent. We overrule this point of error. 

Point 10) State Failed to Turn Over Police Reports of All Officers Involved 

 Barrios complains in his tenth point of error that his "due process rights were violated when
the State failed to turn over all reports that were in the custody of the State. Moreover, there were
no photographs turned over to appellant." Barrios does not specifically identify what was not turned
over to him. He simply says, "Despite the fact that all Motions were granted by the trial court, the
State did not disclose all of the information." Arguably, this point is inadequately briefed. See Tex.
R. App. P. 38.1. The only objection or complaint lodged by Barrios regarding any law enforcement
reports arose when Barrios was cross-examining Trooper Dalme, the canine handler, who made
reference to a short report he had made, explaining that he makes one each time he deploys his dog
for a search. This report was not provided to the State because Dalme was not the officer reporting
this arrest. When Barrios's attorney asked to see this report, Dalme had to retrieve it from another
place, but immediately complied. Although Barrios cites Brady v. Maryland, (10) he makes no effort
to analyze or brief the issue; he does not point out what reports the State failed to supply, the use to
which the report could have been put if it had been supplied earlier, or demonstrate any material
evidence contained in the report which was not otherwise provided. As for Barrios's complaint that
he received no photographs in discovery, none were admitted into evidence. This point of error is
overruled. 

Point 11) Police Testimony as Expert Witnesses

 As with point of error 10, this point contains one paragraph of general citations and then a
paragraph in which error is claimed but there is no argument, analysis, or citation to either the record
or to caselaw supporting the point of error. Barrios claims to have been told at a pretrial hearing that
the State would present no expert witnesses, but that the State's Department of Public Safety
witnesses did, in fact, testify as experts. This point is inadequately briefed. See Tex. R. App. P. 38.1. 

 In spite of the inadequacy of the briefing on this point, we observe that none of the troopers'
testimony amounted to expert testimony. When Barrios did object to Trooper Hogue's testimony as
having taken on the characteristics of expert testimony, the trial court ruled that he was not at that
time finding Hogue to be an expert providing expert testimony; rather, Hogue's testimony was being
admitted as being based on Hogue's personal experience. Hogue testified about why he suspected
Barrios and arrested him for the offense of money laundering: (1) traveling on the interstate and
direction of travel; (2) evidence at the scene did not match Barrios's story of being a painter returning
from Tennessee; (3) money secreted away in a car; (4) a newly purchased vehicle and insurance;
(5) the tale of having traveled a long distance to paint for just two days; and (6) inconsistency in
much of Barrios's representations. This opinion evidence was based on the witness's experience. 
A witness can testify in the form of an opinion under Rule 701 of the Texas Rules of Evidence if the
opinions or inferences are (a) rationally based on his perceptions and (b) helpful to the clear
understanding of the testimony or the determination of a fact in issue. Osbourn v. State, 92 S.W.3d
531, 535 (Tex. Crim. App. 2002) (citing Fairow v. State, 943 S.W.2d 895, 898 (Tex. Crim. App.
1997)). "Since Rule 701 requires the testimony to be based on the witness's perception, it is
necessary that the witness personally observed or experienced the events about which he or she is
testifying.  . . . Thus, the witness's testimony can include opinions, beliefs, or inferences as long as
they are drawn from his or her own experiences or observations." Id. (citation omitted). The
admission or exclusion of evidence is reviewed for an abuse of discretion. Montgomery, 810 S.W.2d
at 391.

 We overrule this allegation of error. 

 We affirm the trial court's judgment. 




 Bailey C. Moseley

 Justice


Date Submitted: October 24, 2007

Date Decided: November 16, 2007


Do Not Publish

1. See Tex. Penal Code Ann. § 34.02 (money laundering). 
2. 143 S.W.3d 565 (Tex. App.--Dallas 2004, pet. ref'd), cert. denied, 126 S.Ct. 2978 (2006). 
3. Granado v. State, No. 07-05-0444-CR, 2006 Tex. App. LEXIS 7589 (Tex. App.--Amarillo
Aug. 25, 2006, no pet.) (mem. op., not designated for publication).
4. See Bell v. Tex. Dep't of Crim. Justice--Institutional Div., 962 S.W.2d 156, 157 n.1 (Tex.
App.--Houston [14th Dist.] 1998, pet. denied).
5. Barrios, in his closing argument, had impugned Trooper Hogue for having failed to check
the battery in his voice recorder on the day of the arrest, which resulted in a lack of audio on the
videotape of the traffic stop and the conversation between Hogue and Barrios. The attorney faulted
Hogue for not "even hav[ing] enough get-up to put a battery in so we can hear what's going on." 
Hogue admitted he failed to check the audio portion of his video recorder before his shift on the day
in question. Answering opposing counsel's argument is a permissible area of jury argument. 
Alejandro v. State, 493 S.W.2d 230, 231-32 (Tex. Crim. App. 1973).
6. A point of error that contains more than one specific ground of error is a multifarious point
of error and we could refuse to consider it. See Marcum v. State, 983 S.W.2d 762, 767 n.1 (Tex.
App.--Houston [14th Dist.] 1998, pet. ref'd) (citing Bell, 962 S.W.2d at 158 n.1). However, a court
may consider multifarious points of error if the court can determine, with reasonable certainty, the
alleged error about which the complaint is made. McCain v. State, 995 S.W.2d 229, 243 n.7 (Tex.
App.--Houston [14th Dist.] 1999, pet. ref'd, untimely filed). As we are able to determine the errors
about which appellant complains, we will, in the interest of justice, consider those complaints.
7. Compare Pennington v. State, 171 Tex. Crim. 130, 345 S.W.2d 527 (1961); Cox v. State,
157 Tex. Crim. 134, 247 S.W.2d 262 (1952), where the Texas Court of Criminal Appeals reversed
based on prosecutor's arguments that the respective communities expected or demanded the jury to
assess lengthy sentences, McGee, 774 S.W.2d at 240, which found the prosecutor's argument asking
the jury "to send a message to the community that it will not tolerate violence within its own
community . . . were not an appeal based on unproven sentiments of the community which this Court
has held to be reversible error." 
8. Act of May 30, 2005, 79th Leg., R.S., ch. 1162, § 2, 2005 Tex. Gen. Laws 3802, 3803.
9. See also McVickers v. State, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993) (an officer may
lawfully stop a motorist who commits a traffic violation); Garcia v. State, 827 S.W.2d 937, 944
(Tex. Crim. App. 1992) (If an officer has a reasonable basis for suspecting that a person has
committed a traffic offense, the officer may legally initiate a traffic stop. The officer also may detain
a person who commits a traffic violation.). The continued detention and request to search a
detainee's car following a traffic stop is reasonable when consent is given. See Ohio v. Robinette,
519 U.S. 33, 38-40 (1996); Simpson v. State, 29 S.W.3d 324, 328 (Tex. App.--Houston [14th Dist.]
2000, pet. ref'd).
10. 372 U.S. 83, 87-88 (1963).


 style='mso-pagination:widow-orphan lines-together;
page-break-after:avoid'> 

Date Submitted:          December
9, 2011

Date Decided:             December
15, 2011

 

Do Not Publish

 

 

 











[1]The
judgment reflects a plea of true. 





[2]We
note the modified order required the community service to begin July 15, 2010,
rather than in June, which apparently resolved the issue raised by Blaviers
counsel during the appearance before the trial court.