**Ricky TAYLOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 423–82.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 21, 1984.

Ward P. Casey, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall, Michael Jergins and Larry Moore, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

THOMAS G. DAVIS, Judge.

Trial was before the jury upon appellant's plea of not guilty of aggravated robbery. V.T.C.A. Penal Code, Sec. 29.-03(a)(2). After finding appellant guilty, the jury assessed punishment, enhanced by a prior conviction, at twenty-eight years. The conviction was affirmed by the Court of Appeals for the Second Supreme Judicial District (Fort Worth). *Taylor v. State*, 632 S.W.2d 693 (Tex.App.1982—Fort Worth). We granted appellant's petition for discretionary review in order to examine the standard used by the Court of Appeals in determining that the evidence was sufficient, and to review the court's finding that an allegedly extraneous offense was properly admitted.

Appellant was convicted of intentionally and knowingly, while in the course of committing theft of property and with intent to obtain and maintain control of said property, threatening and placing David King in fear of imminent bodily injury and death. King was assistant manager of a Pizza Inn restaurant. The trier of fact also found that appellant used and exhibited a firearm.

Appellant does not dispute that two men wearing stocking masks entered a Pizza Inn in Richland Hills on July 8, 1979, and committed an aggravated robbery. He *does* dispute the State's contention that he was one of the two men.

Only two of the many employees and customers of the Pizza Inn on the night in question testified. Assistant manager King stated that the robber using a gun wore blue jeans and a white short-sleeve shirt with little brown stripes on it. According to King, the shirt was a "western type plaid thing." King stated that the other robber had on jeans and a red flannel shirt.

Witness Tammy Combs was held from behind by the gun-wielding robber and did not get a good look at the clothes he or the other robber was wearing.

Both King and Combs testified that seconds after the robbers left the restaurant, shots rang out. When King finally opened the front door he saw an individual in custody of the police. The individual's clothing "appeared to match" the clothing worn by the gun-toting robber. Combs also got a quick glance at the man in police custody. She testified that she did not recognize the man as anyone she had ever seen before or recognize his clothing as clothing she had seen before.

Police Chief Richard Turner was at the police department that evening at approxi-

mately 10:00 p.m. when an alarm went off indicating that a robbery was taking place at the Pizza Inn. Turner and Officer Tisdale immediately drove to the Pizza Inn, arriving in about a minute. Turner was not in uniform but Tisdale was. The police car was unmarked. There was conflicting testimony as to whether a working dome light was in use.

Seconds after the officers exited from the patrol car, two individuals wearing stocking masks over their faces came rapidly out of the Pizza Inn.

Turner testified that the first man was wearing a red flannel long-sleeve shirt. The second man carried a gun and wore blue jeans and a sleeveless western-style shirt. The shirt was white with a light green or turquoise print on it. Tisdale remembered the gunman's shirt as being sleeveless and light colored with a multicolored design on it that was more red than anything else. He too, however, testified that the other individual wore a long-sleeve red flannel shirt.

After the two men exited the Pizza Inn, Turner yelled, "halt, police." The gunman raised his pistol and pointed it at the officers. The officers began firing at the gunman. As the gunman headed toward a car, the flannel-shirted man ran in the opposite direction and the officers fired at him. This man dropped the bag he was carrying and was never apprehended. Meanwhile, the gunman had positioned himself underneath a car. He was quickly persuaded to surrender. When the officers subdued him, they found a stocking on the ground in the immediate vicinity.

Both Turner and Tisdale testified that appellant was the gunman who exited the Pizza Inn on July 8. The officers discovered a car near the spot where appellant was apprehended. It was registered to appellant. A pantyhose package was found in the front seat.

The Court of Appeals ruled that the evidence against appellant was direct and applied the test laid down in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to determine that the evidence was sufficient. Appellant contests both of these aspects of the Court of Appeals' ruling.

■ Direct evidence directly demonstrates the ultimate fact to be proven, whereas circumstantial evidence is direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven. *Rodriguez v. State*, 617 S.W.2d 693 (Tex.Cr.App.1981); *Richardson v. State*, 600 S.W.2d 818 (Tex.Cr.App.1980); *Crawford v. State*, 502 S.W.2d 768 (Tex.Cr.App.1973).

In the instant case there was no direct evidence *that appellant committed an aggravated robbery as charged in the indictment.* Neither of the Pizza Inn employees who testified identified appellant as the robber, nor could they testify that the robber and the man apprehended by the police were one and the same. Though the officers proffered direct evidence, it all concerned what transpired as the robbers fled the scene.

■ Under *Jackson v. Virginia,* supra, and *Griffin v. State*, 614 S.W.2d 155 (Tex. Cr.App.1981), the relevant question, when considering sufficiency of the evidence on appeal, is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. at 2789.

The due process standard for appellate review enunciated in *Jackson v. Virginia,* supra, is applicable in Texas to both direct and circumstantial evidence cases. *Wilson v. State*, 654 S.W.2d 465 (Tex.Cr.App.1983).

■ Thus, though the Court of Appeals incorrectly characterized the evidence of aggravated robbery as direct rather than circumstantial, the standard it ultimately employed to determine sufficiency was the proper one.

■ At the punishment phase, appellant pled not true to the enhancement paragraph of the indictment. The State then proved the enhancement allegation that ap-

pellant had been previously convicted of robbery in 1973 and that the conviction had become final before commission of the aggravated robbery. The State also proved that appellant had been twice convicted of delivery of heroin. Proof of these two prior felony convictions was proper under Art. 37.07, Sec. 3(c), V.A.C.C.P. The State then rested.

Appellant took the stand in his own behalf at punishment and on direct examination admitted his guilt in the 1973 robbery and in the two delivery of heroin cases. Appellant also stated that he had been addicted to heroin in 1976, while still on probation for the 1973 robbery. Until he was jailed when his probation was revoked, he "regularly [shot] heroin about every day." Appellant claimed, however, that he had not used heroin while he was in the penitentiary, nor since his release on parole in January of 1979, six months before the commission of the aggravated robbery. Appellant said he had learned a lesson from his time in the penitentiary.

On cross-examination by the State, appellant claimed again to have been heroin-free since he entered prison. The prosecutor then asked appellant without objection the following series of questions about the mechanics of heroin use:

"Q. Now how is it that people put heroin into their bodies? How is it you put it in yourself?

"A. Insulin syringe.

"Q. A little plastic disposable syringe?

"A. Most of them are.

"Q. And you give yourself a shot with it?

"A. Yes, sir.

"Q. Is it muscular or do you put it in your vein?

"A. In the vein.

"Q. Now is heroin a liquid or a powder or what is it?

"A. Powder.

"Q. Do you put the powder in your vein?

"A. No, sir, you dilute it with water.

"Q. Before you put it in the—do you just put it in water and mix it up or do you cook it?

"A. You put it in water and mix it up and some people cook it.

"Q. What do you mean by cook it?

"A. Put a match under it and let it boil.

"Q. You can't boil it up in powder, can you? You have got to put it in some kind of container and put a match under it and boil it off?

"A. Yes, sir.

"Q. What sort of container do you put it in in order to cook it? To boil it?

"A. A spoon.

"Q. A spoon?

"A. Yes.

"Q. Just hold it in a spoon and put a match under it and cook it in liquid form and put it in a syringe and put it in your vein?

"A. Yes, sir.

"Q. How about—could you improvise a little cooker, like, maybe say the cap of a liter bottle of Coca Cola? Where you have got the twist off cap, the aluminum twist off cap, say, that looks about like that? Could you use that bottle cap maybe where you twist the metal off and leave a little string of metal there on the cap and put some heroin down in the bottom and some water in it and put a match under it and cook it in a bottle cap?

"A. I don't know.

"Q. You have never seen anybody do that?

"A. No.

"Q. Have you ever seen a little cooker like that?

"A. No.

"Q. Have you ever had a little cooker like that?

"A. No."

After this last response, the prosecutor showed appellant State's Exhibit No. 15 and asked if he recognized the contents.

Appellant said "I know what it is but I don't recognize it" and denied having seen the objects before. He further denied that any of the items of the exhibit had been in his car when he parked it at the Pizza Inn on the night of the aggravated robbery.

The arresting policeman, Officer Tisdale, had testified at guilt-innocence that he searched for the car the robbers might have used. When he found the car in the Pizza Inn parking lot, he entered it and found appellant's driver's license and wallet. When the State called Tisdale for rebuttal at punishment, he described finding the wallet in a door pocket of the car. Appellant's earlier testimony established that this door pocket was on the driver's side. Tisdale said that "sticking out a little ways above the top of the pocket" was a vinyl pouch. When he inventoried the contents of the car Tisdale removed the vinyl pouch and found it contained a hypodermic syringe, a bottle cap, and some cotton. This pouch and its contents were admitted into evidence as State's Exhibit 15.

Appellant claims the admission of this exhibit was error, because the evidence proved an extraneous unadjudicated offense in violation of the rule against such proof. *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972).

We do not agree that the items found in appellant's car proved an extraneous offense. While the evidence is sufficient to show appellant possessed the items, *Deshong v. State*, 625 S.W.2d 327 (Tex.Cr.App. 1981), possession of a hypodermic syringe was no crime at the time appellant was arrested. Furthermore, the evidence altogether failed to prove possession of any controlled substance. No controlled substance was found either in the car or on appellant. The police did not test the seized items for drug traces. No tourniquet or needle was found. Tisdale said that appellant had not appeared to be under the influence of drugs. Appellant's arms were examined and there was no indication that he had recently injected any drugs. Thus this case differs from *Powell v. State*, 478 S.W.2d 95 (Tex.Cr.App.1972),

where the Court was of the mind that a police officer's statement "I saw needle tracks and holes, one fresh" tended to show an extraneous offense. There is no evidence in the instant case that appellant possessed or had recently used a controlled substance. The evidence does not prove an extraneous offense and no instruction to the jury limiting the use of the evidence was required. *Baxter v. State*, 645 S.W.2d 812 (Tex.Cr.App.1983); *Lindley v. State*, 635 S.W.2d 541 (Tex.Cr.App.1982); *Roach v. State*, 586 S.W.2d 866 (Tex.Cr.App.1979).

The evidence was relevant to the issue of appellant's reform. When appellant took the stand at punishment, he denied that he committed the robbery he had just been convicted of, and asked the jury to assess as little time as they might see fit because "there has been a mistake made." Appellant claimed that his body was heroin-free, and denied even having seen the syringe and other items found in his car after the robbery. He was arguing in effect that the jury should not consider his two prior convictions for delivery of heroin in assessing punishment because he was free of the habit. He had learned a lesson from his time in the penitentiary. He had reformed, and the jury should discount the possibility of appellant's future use of heroin and the crimes that would naturally follow.

But to the extent that appellant was prepared to use heroin if it should come his way, the impression of reform he left with the jury was questionable at best. The jury was entitled to this information, and admission of the evidence to refute appellant's claim of reform was proper. Moreover, a substantial amount of evidence concerning appellant's sales and use of heroin was already before the jury by the time the State offered the physical evidence appellant complains of. Against this background it is unrealistic to believe that the syringe and other items so inflamed the jury's mind that the prejudicial nature of the evidence outweighed its relevance.

The judgment of the Court of Appeals is affirmed.