NUMBER 13-03-309-CR

 

                               COURT OF APPEALS

 

                      THIRTEENTH DISTRICT OF TEXAS

 

                        CORPUS CHRISTI - EDINBURG

                                                                                         



 

ARMANDO RAMIREZ,                                               Appellant,

 

                                           v.

 

THE STATE OF TEXAS,                                              Appellee.

 



 

                  On Appeal from the 25th District
Court

                          of Gonzales County, Texas.

 



 

                           MEMORANDUM OPINION[1]

 

Before Justices Hinojosa,
Yañez and Castillo

Memorandum Opinion by
Justice Castillo

 








A jury convicted appellant Armando Ramirez
of money laundering[2]
and assessed punishment at twelve years in the Texas Department of Criminal
JusticeBInstitutional Division.  By one issue, Ramirez asserts the evidence
was legally insufficient to sustain the essential element of "criminal
activity" in a money-laundering offense.[3]  We affirm.

Scope and Standard of Review








A legal‑sufficiency challenge calls
on us to review the relevant evidence in the light most favorable to the
verdict.  Jackson v. Virginia, 443
U.S. 307, 319 (1979); Escamilla v. State, 143 S.W.3d 814, 817 (Tex.
Crim. App. 2004); Swearingen v. State, 101 S.W.3d 89, 95 (Tex. Crim.
App. 2003) (en banc); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000) (en banc).  We consider all the
evidence that sustains the conviction, whether properly or improperly
admitted.  Conner v. State, 67
S.W.3d 192, 197 (Tex. Crim. App. 2001) (citing Garcia v. State, 919
S.W.2d 370, 378 (Tex. Crim. App. 1994) (en banc));  King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000) (en banc); Cook v. State, 858 S.W.2d 467, 470
(Tex. Crim. App. 1993) (en banc).  In
this review, we do not reevaluate the weight and credibility of the evidence,
but act only to ensure that the jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993) (en banc).  The
legal sufficiency of the evidence is measured against the elements of the
offense as defined by a hypothetically correct jury charge for the case.[4]  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Swartz v. State, 61 S.W.3d 781, 786 (Tex. App.BCorpus Christi 2001, pet. ref'd).  We then determine if any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson, 443 U.S. at 319; Johnson,
23 S.W.3d at 7.       

Hypothetically Correct Jury ChargeBMoney Laundering

A hypothetically correct jury charge
against which we measure legal sufficiency would ask the jury if appellant
Armando Ramirez (1) on or about January 25, 2000 (2) knowingly possessed,
concealed, and transported (3) the proceeds (U.S. currency) (4)  of criminal activity, (5) and the value of
the funds was $20,000 or more but less than $100,000.  See Tex.
Pen. Code Ann. ' 34.02(a) (Vernon 2003); Malik, 953
S.W.2d at 240.  

Discussion

Ramirez argues that the evidence is
insufficient to prove, circumstantially or otherwise, that the currency was
"the fruit of a felony, or felonies" and that the State "merely
postulates what could be an explanation." 
The State counters that the evidence is sufficient to prove the sole
challenged element.  The record shows as
follows.

Ramirez testified that the driver, Roger
Segura, "may have reached to the back seat and pulled out a bag" and
threw it on Ramirez's lap.  After denying
he knew Segura had money in the vehicle and what the bag contained, Ramirez
testified as follows:








Q: 
Before . . . you hopped out of the car and the bag fell apart, did you
know that there was drug money in the car?

 

A: 
No, sir.

 

Q: 
Do youB

 

A. 
ActuallyBfrom what I was told, I thought it was
drug money, you know.  NoBnothing of drugsBwas mentioned, or no drugsBwe weren<t going to pick up no drugs.  We
weren't buying no drugs, noBwe were going to buy a truck.

 

The jury heard that the amount of money in
the bag Ramirez admittedly possessed[5]
as he exited the vehicle and fled from law enforcement was $19,000.  The jury also heard that the currency seized
was sufficient to purchase a "felony amount" of a controlled quantity
of any of four controlled substances.  A
rational trier of fact could reasonably conclude that the State proved beyond a
reasonable doubt the essential element of "criminal activity."  Thus, we conclude that the evidence is
legally sufficient to prove the sole challenged element of the offense.[6]









Similarly, we conclude that the evidence
is legally sufficient on the State's theory of a money-laundering scheme in
place, based on circumstantial evidence.[7]  The State's expert witness, captain David
Boatright, testified about the common identifiable techniques in the
transportation of bulk currency derived from the sale or purchase of controlled
substances.  The techniques used in the
"scheme" include (1) the use of a rental vehicle, (2) Houston as the
destination, (3) a wire transfer of currency to pay some type of transportation
expense, (4) the use of aliases to disguise ownership of the currency, (5)
bundles of currency, sometimes wrapped in cellophane, and (6) "illicit
currency."  Sources that are used to
identify whether currency is "illicit" include (1) the U.S. Treasury
database which documents cash transactions over $10,000 in financial institutions,
(2) Texas Workforce Commission wage records which document earned income, and
(3) a claim of ownership of the seized funds. 
The State's evidence, as set forth below, proved each of the techniques.









Corporal Patrick Davis testified that he
was on criminal interdiction patrol on the date and time of Ramirez's arrest,
and pulled the vehicle over for speeding. 
Ramirez exited the vehicle in possession of a bag containing $19,000 and
fled from law enforcement.  Ramirez discarded
his shirt, admittedly to change his appearance and thereby thwart identification
and apprehension.  Meanwhile, Segura
temporarily engaged Davis in a vehicle pursuit, ultimately stopped, and was
apprehended.  Segura gave Davis an alias
for Ramirez.  In the search of the
vehicle, incident to the arrest,  Davis
discovered $10,000 in currency wrapped in blue cellophane.  In plain view, he observed marihuana seeds
and residue on the passenger seat. 
Currency seized from the persons of Ramirez and Segura at booking
approximated $500, with Ramirez possessing the larger sum of the two.[8]


Police officer Garland Gaston, a canine
handler, testified that at the scene, the 
police canine alerted to narcotics on the front passenger side of the
vehicle and the front seat itself.  After
the currency was collected and concealed at law enforcement quarters as part of
the continuing investigation, the canine alerted to narcotics on the currency.  Gaston testified that the odor of narcotics
remains on currency for approximately twenty-four hours.[9]  Based on the canine's reaction, the currency
had been in recent close proximity to a controlled substance.  Gaston further testified that the canine
would not alert on the currency absent an odor from a controlled substance. 








The jury also heard that a third party
rented three vehicles, each showing over one thousand miles traveled.  On the rental contract for the vehicle Segura
drove, the third party listed a wrong address. 
The U.S. Treasury database revealed no legitimate cash transactions
involving Ramirez and Segura.  Neither
Ramirez[10]
nor Segura was gainfully employed. 
Neither claimed an ownership interest in the currency.  Both disclaimed any interest in the currency
seized for purposes of forfeiture proceedings. 
Finally, the jury could infer Ramirez's guilt from evidence of
flight.  See Bigby v. State, 892 S.W.2d 864, 883 (Tex.
Crim. App. 1994) (en banc) (holding that evidence of flight is admissible
as a circumstance from which a jury may draw an inference of guilt); see also Cawley v. State, 310
S.W.2d 340, 342 (Tex. Crim. App. 1957) (stating flight "amounts in effect
to a quasi admission of guilt of the offense charged"); Martin v. State,
151 S.W.3d 236, 245 n.8 (Tex. App.BTexarkana 2004, pet. ref'd) (noting no
distinction has been made between flight from a crime scene and flight from
police). 

Ramirez denied culpability.  He testified Segura approached him the night
before their arrest, while Ramirez played basketball.  Segura invited him to Houston to buy a
truck.  Because Ramirez had never
traveled to Houston before, he agreed to go with his friend.  When Davis signaled the stop, Ramirez fled to
avoid arrest on a probation violation warrant. 
Ramirez denied contrary evidence from law enforcement.[11]


According to Ramirez's theory at trial,
the State's evidence merely demonstrated that he was riding as a passenger in a
vehicle that contained currency, and he had no knowledge of or interest in the
currency.  Essentially, the defense
theorized that Segura deceived Ramirez into traveling with him to Houston,
through a known interdiction area, and then used Ramirez as a decoy at the
traffic stop so that Segura could flee the scene.  Thus, Ramirez argues, the evidence is legally
insufficient to prove money laundering, and, in particular, the essential
element of "criminal activity." 








In a sufficiency review, we are governed
by the fact that the jury is the exclusive judge of the facts proved, the
credibility of the witnesses, and the weight to be given to the testimony.  Tex.
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979).  The jury may believe or disbelieve all or any
part of a witness's testimony, even though the witness's testimony has been
contradicted.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). 
Reconciliation of conflicts in the evidence is within the exclusive
province of the jury.  Jones v. State,
944 S.W.2d 642, 647 (Tex. Crim. App. 1996). 
By its verdict, the jury rejected Ramirez's claim of innocence.  Viewed in the light most favorable to the
verdict, the circumstantial evidence adduced by the State has sufficient
probative force to constitute a basis for the rational inference that the
currency was derived from "criminal activity."

Considering all the evidence that sustains
the conviction in the light most favorable to the verdict, measured by the
hypothetically correct jury charge for the offense of money laundering, we
conclude that a rational trier of fact could have found beyond a reasonable
doubt the essential element of "criminal activity."  Jackson, 443 U.S. at 319.  Accordingly, we overrule the sole issue
presented and affirm the trial court judgment.

ERRLINDA
CASTILLO      

Justice

 

Dissenting Memorandum Opinion by Justice Linda Reyna Yañez

 

Do not publish.

Tex. R. App. P. 47.2(b)

 

Memorandum Opinion delivered and filed

this 28th day of July, 2005.

 

 











[1] See Tex. R. App. P. 47.2, 47.4.  





[2]See Tex. Pen. Code Ann.
_ 34.02(a)(1) (Vernon 2003).





[3] Section 34.02 states that a person commits an offense
if the person knowingly acquires or maintains an interest in, receives,
conceals, possesses, transfers, or transports the proceeds of  criminal activity.  Tex.
Pen. Code Ann. _ 34.02(a)(1) (Vernon 2003). 
"Criminal activity" means any offense, including any
preparatory offense that is classified as a felony under the laws of this state
or the United States.  Id. _ 34.01(1) (Vernon 2003).  





[4] This standard of legal sufficiency ensures that a
judgment of acquittal is reserved for those situations in which there is an
actual failure in the State's proof of the crime rather than a mere error in
the jury charge submitted.  Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).





[5] "Possession" means actual care, custody,
control, or management.  Tex. Health & Safety Code Ann. '
481.002(38) (Vernon Supp. 2004-05).  





[6] The circumstantial evidence adduced by the State
demonstrates the essential element of proceeds of "criminal
activity."  Circumstantial evidence
is an effective and accepted means to prove certain money is the proceeds of
criminal activity.  See State v.
$11,014.00, 820 S.W.2d 783, 784 (Tex. 1991).  





[7] Circumstantial evidence is "direct proof of a
secondary fact which, by logical inference, demonstrates the ultimate fact to
be proven."  Taylor v. State,
684 S.W.2d 682, 684 (Tex. Crim. App. 1984) (en banc).  Every fact and piece of evidence need not,
however, point independently to the defendant's guilt.  See Conner v. State, 67 S.W.3d 192,
197 (Tex. Crim. App. 2001).  A conviction
may rest on the cumulative strength of all incriminating circumstances.  Id. 





[8] Segura had $111.00. 
Ramirez had $311.76.  The sole
expense proven was for breakfast. 





[9] The jury also heard that the odor of narcotics on
currency occurs because a person will handle narcotics, not clean the hands,
and then handle the currency.  The odor
of the narcotics is on the person's hands and is left on the currency after
handling. 





[10] Ramirez testified he occasionally worked with his
father. 





[11] The jury heard evidence that (1) Corporal Davis
intercepted a cellular phone call in which the caller stated he was buying a
truck from Segura, (2) Segura stated they were going to Houston to see a
girlfriend, and (3) Ramirez told the transport officer he hid $2,000 after he
fled.