In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00089-CR


______________________________




BOBBY J. WHETSTONE, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 76th Judicial District Court


Morris County, Texas


Trial Court No. 9556




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley


Concurring Opinion by Chief Justice Morriss


MEMORANDUM OPINION


 

 Bobby J. Whetstone, Jr., has filed his appeal from his felony conviction by a jury of bail
jumping (Tex. Penal Code Ann. § 38.10(a) (Vernon 2003)), which was enhanced to a second-degree felony due to a prior conviction, for which he was sentenced to sixteen years' incarceration.

 As his points of error, Whetstone urges that the bail bond which secured his release was not
an instanter bond (therefore, not giving rise to the presumptions of notice which arise under an
instanter bond), that the trial court erred in its refusal to supply a requested charge of reasonable
excuse for his failure to appear, and that the evidence was neither factually nor legally sufficient to
sustain his conviction.

 The offense of bail jumping and failure to appear is committed when a person lawfully
released from custody on condition that he subsequently appear intentionally or knowingly fails to
appear in accordance with the terms of his release. Tex. Penal Code Ann. § 38.10(a).

WAS THIS AN INSTANTER BOND?

 Whetstone maintains that the bond under which he was released was not a valid instanter
bond because it failed to state within its face the name of the court before which he was supposed
to appear, did not state the date on which he was to appear, and did not specify whether he was
charged with a felony or a misdemeanor. 

 The reason that Whetstone finds it important to challenge whether this is validly an instanter
bond is that, generally, an instanter bond presumes that the person being released was given proper
notice of the time and place for appearance at the time of his release and, in the absence of evidence
of a reasonable excuse, is sufficient to prove an appellant intentionally and knowingly failed to
appear in accordance with the terms of his release. Euziere v. State, 648 S.W.2d 700, 702 (Tex.
Crim. App. 1983); Etchison v. State, 880 S.W.2d 191, 192 (Tex. App.--Texarkana 1994, no pet.). 
Therefore, the burden on the State of showing notice is much lower with an instanter bond.

 The bail bond form which was used to provide Whetstone's release from pretrial incarceration
and the way its blanks were filled out are not exemplars of the practice which should be followed. 
As the bond was filled out, the complained-of portion reads as follows (with the portions which were
filled out in longhand being underlined):

 The condition of the above obligation is such that whereas the above named
principal stands charged with a (MISD/FELONY) 

To wit Possession Controlled Substance PG 1>1G< 4G in cause No. on site 

In the District of Morris County, Texas. 

 Whetstone maintains that two defects in the filling out of the bond renders it ineffective as
an instanter bond. The first defect or omission involves the failure to have stricken either "MISD"
or "FELONY," and the second defect is that the person filling in the bond form also simply inserted
only the word "District" in the space which properly should have said "District Court." 

 The designation on a bond of whether the charge is a misdemeanor or a felony is required
by statute. Tex. Code Crim. Proc. Ann. art. 17.08 (Vernon 2005). If the reader of the bond stops
reading the bond at the point wherein neither "MISD" or "FELONY" has been interlined or stricken,
it would appear that this could have been fatally defective. However, the bond goes on (in shorthand
language) to recite that Whetstone was charged with possession of a controlled substance, penalty
group one, being more than one gram but less than four grams. The offense as described is a second-degree felony. Tex. Health & Safety Code Ann. § 481.112(a), (c) (Vernon 2003). Therefore,
the error in not having interlined either "FELONY" or "MISD," thereby plainly characterizing the
offense as being either a misdemeanor or a felony in the space provided in the form, was cured by
the later description of the offense, which is a felony.

 As to the issue of the bond saying only the word "District" in the space which properly should
have said "District Court," the resulting sentence should not be taken solely out of context. One
should also read further in the bond. Despite the omission of the word "court" in the space provided,
the bond form goes on to recite as follows:

Now, if the said principal shall well and truly make his/her appearance before the
said court on the instanter, or upon notice of the court, and further, shall well and
truly make his/her appearance before any Court or Magistrate to which said charge
may be transferred or before whom this cause may hereafter be pending at any time
hen [sic], and any place where his/her presence may be required under the Code of
Criminal Procedure of the State of Texas or by any Court or Magistrate, and for all
subsequent proceedings had relative to said charge and there remain from day to day
and term, until discharged by due course of law, then and there to answer said
accusation against him/her, then this obligation shall become null and void;
otherwise to remain in full force and effect.


 Although Whetstone maintains that the omission of the word "court" from the bond form
placed the burden on Whetstone to simply appear at some unnamed and unidentifiable situs in the
"district" of Morris, the above portion of the bond form plainly shows that Whetstone had the
obligation to appear at a court. No rational person could reasonably expect that if they were to
appear at some unnamed place in Morris County at some unnamed time, they had satisfied the
requirements of an appearance bond. The fact that Whetstone was charged with felony possession
of a controlled substance would reveal that the place he was obligated to appear was the District
Court of Morris County. Since he was to appear "instanter," there would be a duty on Whetstone
to inquire if there were any question in his mind. Undoubtedly, the bond is not flawless; they seldom
are. However, the minor flaws in the bond itself do not render it any less an instanter bond than if
the flaws did not exist. This point of error is overruled.

REFUSAL TO SUBMIT A REQUESTED CHARGE OF REASONABLE EXCUSE

 Section 38.10(c) of the Texas Penal Code provides that it is a defense to prosecution for a
failure to appear if the actor had a reasonable excuse for his failure to appear in accordance with the
terms of his release. Tex. Penal Code Ann. § 38.10(c) (Vernon 2003).

 Whetstone requested that the jury be instructed that it was not to find him guilty of the
offense of failure to appear if he provided a reasonable excuse to explain that failure. This request
was denied. "A defendant is entitled, upon a timely request, to an instruction on any defensive issue
raised by the evidence, provided that: 1) the defendant timely requests an instruction on that specific
theory; and 2) the evidence raises that issue." Rogers v. State, 105 S.W.3d 630, 639 (Tex. Crim.
App. 2003)

 In the face of the instanter bond under which Whetstone was released from custody,
Whetstone failed to provide any reasonable excuse for his failure to appear. Rather, he attempted
through the testimony of other persons to show that reasons existed why he may not have received
a postcard notice of the setting for trial. As previously noted, when a person's release from custody
is shown to have been obtained by way of an instanter bond, that evidence alone constitutes a prima
facie showing that he had notice of the proceeding at which he failed to appear. Bell v. State, 63
S.W.3d 529, 531 (Tex. App.--Texarkana 2001, pet. ref'd). After the prima facie case was
established by the State by introduction of the instanter bond, Whetstone failed to present evidence
to rebut that prima facie showing. 

 Rather, Whetstone first presented testimony from Erma Crockett, Whetstone's one-time
girlfriend with whom he had lived, in an effort to show that the postcard notice of a setting for trial
was not received at the address given by him at the time he posted bond. (1) However, that proffer was
somewhat blunted by her testimony that the residence at the address he provided did not have a mail
receptacle and that Whetstone and Crockett had received their mail at a post office box rather than
the street address shown on the bond. Further, Whetstone no longer resided at that address when the
bond was posted (already having moved from that location before the bond was posted).

 Whetstone then presented evidence from his current fiancé, Mary Smith, who testified that
she believed that, had Whetstone received actual notice of any trial setting, he would have told her
of that fact because, "[H]e always tell [sic] me when he has court." Smith testified that Whetstone
had once lived in Ore City, but that she was unsure of the address and was unaware of the location
where Whetstone received his mail. She further testified that Whetstone was residing in a town other
than Ore City when he posted his bond. 

 Whetstone did not testify.

 Before Whetstone was entitled to an instruction that a reasonable excuse for a failure to
appear is exculpatory of the charge, he must first provide some evidence that a reasonable excuse
existed. See Vasquez v. State, 225 S.W.3d 541, 546 (Tex. Crim. App. 2007); Hernandez v. State,
819 S.W.2d 806 (Tex. Crim. App. 1991); Wagner v. State, 687 S.W.2d 303 (Tex. Crim. App. [Panel
Op.] 1984); Brooks v. State, 567 S.W.2d 2 (Tex. Crim. App. [Panel Op.] 1978). Not having
provided a reasonable alternative explanation for his failure to appear, there was no error in the
refusal of the trial court to provide that requested instruction.

 We overrule this point of error.

SUFFICIENCY OF THE EVIDENCE

 Whetstone has maintained that the evidence is neither legally nor factually sufficient to
sustain his conviction. Since he has challenged both thresholds, in order to avoid redundancy, we
discuss them together.

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).

 On the other hand, in a factual sufficiency review, the standard is somewhat different:

 In a factual sufficiency review, we view all the evidence in a neutral light,
both for and against the finding, and set aside the verdict if "proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, or the proof
of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." 
In conducting such a review, we consider all of the evidence weighed by the jury,
comparing the evidence which tends to prove the existence of the elemental fact in
dispute to the evidence which tends to disprove it. We are authorized to disagree
with the jury's determination even if probative evidence exists which supports the
verdict, but we must avoid substituting our judgment for that of the fact-finder.


Vodochodsky v. State, 158 S.W.3d 502, 510 (Tex. Crim. App. 2005) (footnotes omitted). 

 Both legal and factual sufficiency standards require the reviewing court to consider all of the
evidence. "The difference between the two standards is that the former requires the reviewing court
to defer to the jury's credibility and weight determinations while the latter permits the reviewing
court to substitute its judgment for the jury's on these questions 'albeit to a very limited degree.'" 
Rollerson v. State, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007) (quoting Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 416-17 (Tex. Crim.
App. 2006)).

 The evidence presented to the jury was fairly complete. Jim Goodman, the Morris County
jail superintendent, testified that (1) he recognized Whetstone as the person who had signed the bond
and who had been released from custody in reliance upon it; (2) under an instanter bond, it is the
duty of the person discharged under it to check with his bondsman, his lawyer, the district clerk's
office, and others to ascertain precisely when he is to make his appearance in court; (3) the
"Possession Controlled Substance PG 1>1G< 4G" as contained on the bond was inserted by him and
this was explained by him to mean "possession of a controlled substance, Penalty Group 1," being
"greater than one gram and less than four grams;" and (4) Whetstone provided the address of 108 Iris
Street, Ore City (the same address shown on the bond) as being his address.

 D. W. McClain, a Morris County justice of the peace, testified that he had arraigned
Whetstone on the felony charge for which Whetstone had made bond and provided Whetstone with
the form to make application for a court-appointed attorney for the felony charge. McClain further
testified that Morris County has only one courtroom, that courtroom being employed by both district
courts having jurisdiction in the county and by the Morris County county court. 

 Testimony was given that the Morris County district clerk's office had mailed courtesy
notices of docket calls for Whetstone's case by United States Post Office mail on two occasions to
Whetstone, his attorney, and his bondsman, the notices directed toward Whetstone being addressed
to him at the same address reflected on his bail bond. On one occasion, the courtesy notice
addressed to Whetstone was returned with the notation: "NO MAIL RECEPTACLE. UNABLE TO
FORWARD." The other courtesy notice was not returned. 

 Peggy June Conner, a Morris County sheriff's deputy, testified that she was serving as the
bailiff for the 276th Judicial District Court at the time of a docket call on October 24, 2006, when
Whetstone's case was called. When Whetstone made no response to the call of the case, pursuant
to instructions from the district judge, she had called Whetstone's name three times at the courthouse
door on that same date, but Whetstone made no response.

 Whetstone's bondsman testified that Whetstone made no effort to keep in contact with the
him in order to make certain that he appeared when his case was called.

 As previously noted, Crockett testified that the residence she had shared with Whetstone had
no mail receptacle and that Whetstone no longer resided at that address when the bond was posted. 
In addition to that, the testimony of Smith further confirmed that Whetstone was not residing at the
address in Ore City which he provided for the bail bond at the time the bond was given. 

 The State argued, and the jury can consider, that the failure of Whetstone to provide an
accurate address on his bail bond for him to receive notice, and his supply of an address where he
no longer lived and which had no mail receptacle, constituted evidence of intentionally and
knowingly engaging in conduct which would prevent him from receiving notice. See Vanderhorst
v. State, 821 S.W.2d 180 (Tex. App.--Eastland 1991, pet. ref'd).

 The fact that Whetstone provided no accurate current address on his bail bond, that there was
no evidence that Whetstone had made inquiry regarding the date and time he was supposed to make
an appearance, and that Whetstone did not provide the authorities with his address at a later time are
further facts the jury could take into account in making its findings.

 In a bail-jumping case, it would be quite rare to have a circumstance of having direct
evidence that the principal in the bond was well aware of the date and time a hearing was scheduled
and purposed, nevertheless, not to appear. Almost inevitably, the presumption which an instanter
bond will provide, together with circumstantial evidence, will be the only proof available to
prosecute for this offense.

 Circumstantial evidence is "direct proof of a secondary fact which, by logical inference,
demonstrates the ultimate fact to be proven." Taylor v. State, 684 S.W.2d 682, 684 (Tex. Crim. App.
1984) (en banc). Every fact and piece of evidence need not, however, point independently to the
defendant's guilt. See Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). A conviction
may rest on the cumulative strength of all incriminating circumstances. Id. 

 The above evidence was sufficient to meet both the legal sufficiency burden and the factual
sufficiency burden to sustain the judgment which was rendered.

 We affirm the judgment.



 Bailey C. Moseley

 Justice

 



CONCURRING OPINION


 Bobby J. Whetstone, Jr., misplaces his argument when he asserts on appeal that the alleged
defects in the bond he filed in this case render the bond something other than an instanter bond and
that, for that reason, there was insufficient evidence he had notice of when and where to appear in
court. But Whetstone cites, and we find, no authority supporting his theory that a bond which has
"instanter" terms (2) but also has defects is, because of those defects, not an instanter bond and thereby
provides no evidence of notice.

 Certain defects in a bond can be evidence that the defendant did not get notice of a time or
place to appear and that evidence found within the bond can overcome the prima facie proof of
notice provided by an instanter bond. An instanter bond provides prima facie proof that the
defendant had notice of when and where to appear. Euziere v. State, 648 S.W.2d 700, 702 (Tex.
Crim. App. 1983); Bell v. State, 63 S.W.3d 529, 531 (Tex. App.--Texarkana 2001, pet. ref'd);
Richardson v. State, 699 S.W.2d 235, 238 (Tex. App.--Austin 1985, pet. ref'd). But bond defects
themselves can provide evidence which contradicts that prima facie proof, such as blanks which
indicate that the defendant did not have the notice. See Fish v. State, 734 S.W.2d 741, 743-44 (Tex.
App.--Dallas 1987, pet. ref'd) (bond's defects were evidence of lack of notice, no positive evidence
of notice appeared, resulting in finding of no notice). But see Bell, 63 S.W.3d at 532 (defective
instanter bond, but other evidence showed actual notice, resulting in finding of notice).

 Here, as is pointed out by the majority opinion's analysis, the alleged defects in the bond did
not show lack of notice. Therefore, the prima facie notice provided by the instanter bond remained
uncontradicted. 

 I respectfully concur in the majority opinion.




 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 31, 2007

Date Decided: November 21, 2007


Do Not Publish

1. Whetstone's address as shown on the bond is 106 Iris Street, Ore City, Texas, 75683.
2. "Instanter" means "[i]nstantly; at once." Black's Law Dictionary 812 (8th ed. 2004). It
refers to when a defendant must appear.