Opinion Issued December 6, 2007











In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00806-CR




ANGELA RENEE CHENEVERT, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the County Court at Law No. 1
Brazoria County, Texas
Trial Court Cause No. 145377




MEMORANDUM OPINION
          Appellant, Angela Renee Chenevert, pleaded not guilty to the Class B
misdemeanor offense of theft. See Tex. Pen. Code Ann. § 31.03(e)(2)(A)(i) (Vernon
Supp. 2006). A jury found appellant guilty, and the trial court assessed punishment
at 30 days in jail, suspended for nine months’ community supervision and a $50 fine.
We conclude that the evidence is legally insufficient to support appellant’s conviction
for theft. We reverse and render a judgment of acquittal.
Facts
          In August 2006, appellant went shopping at a Kohl’s Department Store with
Dianndrea Telsey. Appellant was a passenger in Telsey’s car. The two shopped for
over an hour, each carrying a large, black purse. Appellant also carried throughout
the store a Styrofoam cup and a plastic bag. Catching the attention of loss-prevention
personnel early in their shopping excursion because their large black purses raised
suspicion, appellant and Telsey were followed with security cameras as they
meandered throughout the store. Although there are times when appellant is not
visible on the videotape created from the security cameras, her absences are sporadic
and brief.
          Appellant and Telsey sometimes browsed the store together and other times
separated. It is undisputed that Telsey attempted to steal some items. Security
cameras recorded her tearing tags from the items and placing them in her bag at a
time when appellant was not with her. The videotape reveals no suspicious behavior
from appellant, however.
          After shopping for over an hour, appellant and Telsey went to customer service
to “check out.” Telsey went to the restroom, while appellant completed her purchase
and exchange. Once her transaction was completed, appellant went to the restroom,
taking her purse, but leaving her purchase and Styrofoam cup on the counter. When
she returned, appellant took her items from the counter and left the store. Telsey was
still completing her transaction when appellant left. It is undisputed that no one saw
appellant conceal any items while in the store, and that no effort was made to stop
appellant prior to her leaving. Telsey was, however, detained in the foyer and found
to have stolen merchandise.
          After waiting some time at the car,


 appellant returned to the store, apparently
looking for Telsey, whom appellant was unaware had been detained. Appellant made
a couple of trips between the car and the store until she was detained by the Brazoria
County Police. After obtaining consent to search the car, the police discovered a
plastic bag in the glove compartment containing two pair of jeans sold exclusively at
the Kohl’s chain of stores. When appellant could not produce a receipt for the jeans,
she was arrested for stealing them. 
 
Legal Sufficiency of the Evidence
A. Standard of Review
          When evaluating the legal sufficiency of the evidence, we view the evidence
in the light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Evans
v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d
795, 798 (Tex. Crim. App. 2005). The standard is the same for both direct and
circumstantial evidence cases. King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App.
1995). We do not resolve any conflict of fact, weigh any evidence, or evaluate the
credibility of any witnesses, because this was the function of the trier of fact. See
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); Adelman v. State, 828
S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State, 819 S.W.2d 839, 843
(Tex. Crim. App. 1991). Instead, our duty is to determine whether both the explicit
and implicit findings of the trier of fact are rational by viewing all the evidence
admitted at trial in the light most favorable to the verdict. Adelman, 828 S.W.2d at
422. In so doing, any inconsistencies in the evidence are resolved in favor of the
verdict. Matson, 819 S.W.2d at 843.
 
B. Governing Law 
          A person commits the offense of theft if she unlawfully appropriates property
with the intent to deprive the owner of the property. Tex. Pen. Code Ann. § 31.03(a)
(Vernon Supp. 2006). “Appropriate” means: (A) to bring about a transfer or purported
transfer of title to or other nonpossessory interest in property, whether to the actor or
another, or (B) to acquire or otherwise exercise control over property other than real
property. Id. § 31.01(4). The indictment alleged that appellant appropriated the
property by “acquiring or other [sic] exercising control over” it.
C. Analysis
          Viewing the evidence in the light most favorable to the verdict, a rational trier
of fact could not have found beyond a reasonable doubt that appellant appropriated
the jeans found in the glove box of Telsey’s car. See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Drichas, 175 S.W.3d at 798.
          The State contends that it proved that appellant committed theft as alleged in
the indictment by circumstantial evidence. “Circumstantial evidence is ‘direct proof
of a secondary fact which, by logical inference, demonstrates the ultimate fact to be
proven.’” Cowan v. State, 840 S.W.2d 435, 438 n.10 (Tex. Crim. App. 1992)
(quoting Taylor v. State, 684 S.W.2d 682, 684 (Tex. Crim. App. 1984)). 
          BarJohn Coleman, the loss-prevention supervisor at Kohl’s, testified that he
watched appellant and Telsey while they browsed throughout the store. Coleman did
not witness any suspicious behavior by appellant. However, once Coleman saw
Telsey place items in her bag, his focus remained primarily on Telsey. Coleman
testified that the jeans that appellant was charged with stealing could have been stolen
from any Kohl’s on any day. Coleman never saw appellant or Telsey with any jeans. 
          Crystal Haury, the district loss-prevention manager for Kohl’s, testified that she
was in this particular store for training when appellant and Telsey raised suspicion. 
She, along with Coleman, kept a continuous eye on them. Haury did not notice any
suspicious behavior from appellant. After the Brazoria County Police had searched
Telsey’s car, Haury identified “two pairs of little girl’s Candie’s bottoms, jeans”
which were found in the glove compartment. Haury explained that the jeans were
sold exclusively at Kohl’s and testified that they had a Kohl’s “ticket” on them with
a unique UPC and bar code. She clarified that those jeans were sold exclusively by
Kohl’s company, not exclusively by that particular Kohl’s store. Id. 
          Haury testified that she could not say when the jeans had been stolen, although
Kohl’s keeps a “very detailed inventory of its merchandise in the store.” Maury
explained that, if two pair of pants went missing on a particular day, she would be
able to find that out. However, no effort was made to determine if jeans matching
those that appellant was arrested for stealing went missing that day from that
particular store. 
          The State’s case is best summed up through its closing argument:
[I]s it reasonable that this Defendant just hopped in the car where there
was stolen merchandise, where the other person with them never made
it to that car? How did that stolen merchandise get there? Is it just a
really unfortunate coincidence that this Defendant hopped into that
automobile? I mean, really unfortunate from—that those pair of pants,
Candie’s, who have exclusive rights with Kohl’s, exclusive, how did
they end up there? Okay.

          . . .
 
We don’t actually see this woman conceal anything, and all we do
see is the other woman tearing tickets—the tags, off the other stuff;
but I’m going to ask you to look at that video and say—look at that
quality. Are there times that the tracking is—I can’t make out what’s
going on? Okay. Are there times that neither one are on the video
camera itself? Okay. And secondly—excuse me, thirdly, BarJohn
Coleman’s testimony himself. He was keyed on the other lady. There
were other times that she was completely off the screen. We don’t know
where she was. Okay. Look at that. Think about that. Okay. That’s
evidence.
 
Now, you’re going to see suspicious behavior. You’re going to see
people standing behind fixtures, behind racks. People are in the way. 
We’ve got an unclear quality. But what we do know is that this woman
right here walked out to her car and put some Candie’s jeans in the
glove box. Where was she sitting in that car? In the passenger seat. 
Where was it found? In the glove box, in front of the passenger seat. 
How long did she sit in that car? How long did—you can watch the
video. You can take a look. Were those windows tinted? They were. 
I don’t know if y’all noticed, but those were tinted windows.
 
And you know what else we didn’t see? We didn’t see her exit the very
first time. We didn’t see her exit the very first time. . . . Remember the
suspicious black purse? We had two people testify about that suspicious
black purse. How about this? How about the suspicious other bags
from other stores carried in there? . . . Remember, thieves don’t commit
crimes in front of cameras.

(Emphasis added).

          The State contends on appeal that the following evidence supports the verdict:
(1) appellant was carrying a large, black bag, as was Telsey, who was caught
shoplifting; (2) appellant left the store before Telsey had finished her transaction and
did not search the store when she returned to find Telsey, but rather waited in the
foyer before returning to the car; (3) appellant had access to Telsey’s car and,
therefore, access to the glove compartment where the jeans were found; (4) the jeans
were found in the glove compartment of a car in the parking lot of that particular
Kohl’s and, therefore, were more than likely stolen from that Kohl’s; and (5)
appellant was the only one with access to the car during the time that Telsey was
detained. 
          This evidence fails to support an inference that appellant committed theft. To
warrant an inference of guilt from the circumstance of possession, the possession
must be personal, recent, unexplained, and involve a distinct and conscious assertion
of right to the property. Sweeny v. State, 925 S.W.2d 268, 270 (Tex. App.—Corpus
Christi 1996, no pet.) (citing Sutherlin v. State, 682 S.W.2d 546, 549 (Tex. Crim.
App. 1984)). There is no evidence that appellant consciously asserted any right to the
jeans concealed in Telsey’s glove compartment. See id. Further, although appellant
had access to the jeans via her access to the interior of Telsey’s car, access to property
alone cannot support a conviction. See Thomas v. State, 915 S.W.2d 597, 599 (Tex.
App.—Houston [14th Dist.] 1996, pet. ref’d). Most importantly, there is no evidence
that the jeans were unlawfully appropriated by anyone, much less by appellant. 
          No direct evidence established that appellant acquired or exercised control over
the jeans. Further, no rational fact-finder could infer from the circumstantial evidence
presented at trial that appellant exercised control over them. Neither appellant nor
Telsey was ever seen with the jeans, and there is no evidence that the jeans were
missing from this Kohl’s inventory. The jeans could have been purchased or stolen
at any time from any Kohl’s. Viewing the evidence in the light most favorable to the
verdict, we hold that no rational trier of fact could have found that appellant
unlawfully appropriated the jeans identified in the indictment. See Johnson, 23
S.W.3d at 7. Thus, the evidence was legally insufficient to support the conviction for
theft.



 
Conclusion
          Because we hold that the evidence is legally insufficient, we reverse the
judgment of the trial court and render a judgment of acquittal for appellant.   
 

 
Tim Taft
Justice
 
Panel consists of Justices Taft, Hanks, and Higley.

Do not publish. See Tex. R. App. P. 47.2(b).