**Opinion issued July 16, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00496-CR

———————————

## CHRISTOPHER DIONE ALEXANDER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1557693**

---

## MEMORANDUM OPINION

A jury found appellant, Christopher Dione Alexander, guilty of the offense of theft.[1] After he pleaded true to the allegations in two enhancement paragraphs that he had twice been previously convicted of felony offenses, the trial court

---

[1] *See* TEX. PENAL CODE ANN. § 31.03(a).

assessed his punishment at confinement for eight years. In his sole issue, appellant contends that the evidence is legally insufficient to support his conviction.

We modify the trial court's judgment and affirm as modified.

## Background

A Harris County Grand Jury issued a true bill of indictment, alleging that appellant, on or about July 5, 2017, "unlawfully appropriate[d], by acquiring and otherwise exercising control over property, namely, cash money owned by [the complainant] . . . with the intent to deprive the [the complainant] of the property."

At trial, Houston Police Department ("HPD") Officer C. Dorton testified that "jugging" or "bank jugging" is where "people sit in front of banks" and watch for other individuals to exit after they have withdrawn money. They then follow the person who has withdrawn money to another location to "rob that person of the[] money." Dorton testified that he is part of a team that investigates these types of crimes regularly. He further explained that because it is not illegal to park in a bank parking lot or to follow another person, it is difficult to know who will be targeted. In investigating these types of offenses, HPD uses a plain-clothed law enforcement officer to act like a bank customer and then waits for a person intending to commit bank jugging to follow the plain-clothed officer. Dorton further explained that HPD uses "bait money" in its "bank-jugging" investigations. In order to avoid losing the "bait money" during an operation, an HPD officer will

2

attach the "bait money" to a "steel security cable" which is secured to the vehicle driven by the plain-clothed officer.

In July 2017, HPD received "a complaint of an increase of bank juggings occurring off of Washington Avenue" in Houston, Texas, "where customers were being followed from [a] bank and they were either having their purses snatched or their windows broken and their money stolen." In response, on July 5, 2017, Officer Dorton and other HPD law enforcement officers went to a Bank of America off of Washington Avenue "to hopefully try to catch the guys who were doing it."

At the Bank of America, Officer Dorton and other law enforcement officers observed a black, "small, boxy SUV" that was "parked in front of the bank." "No one got in or out of the [SUV], which is consistent with what bank jugging suspects do." And the SUV remained parked outside of the bank for "an extended period of time, more than 10 minutes." The SUV left the bank and Dorton followed it to a gas station where he saw the driver of the SUV, who he identified as appellant, and a "heavyset, black female in the front passenger seat" with the "seat laid back all the way." The SUV returned to the bank, where it "parked again positioned with the view to watch the front doors."

At that point, a plain-clothed law enforcement officer entered the bank with $2,500 in "bait money" to act as a customer. He walked out of the bank "with a

3

little bank bag" and drove to a pawn shop in an unmarked City of Houston truck. Appellant followed the plain-clothed officer in his SUV.

The plain-clothed officer got out of his truck and entered the pawn shop without carrying anything in his hands. Appellant then parked his SUV next to the plain-clothed officer's truck. After exiting his truck, appellant used a "spring-loaded window punch" to break the passenger-side window of the plain-clothed officer's truck. Appellant reached in through the broken window and pulled the bank bag containing the "bait money" out of the window. Once he realized that the bag of "bait money" was attached to a security cable, appellant abandoned the "bait money" and fled the scene. Officer Dorton and other law enforcement officers ultimately apprehended appellant nearby.

HPD Sergeant R. Watson testified that he was the plain-clothed officer who, on July 5, 2017, carried the "bait money" out of the Bank of America when Officer Dorton and other law enforcement officers went to the bank to investigate "bank jugging" on that day. He testified that after he exited the Bank of America on that day, he got into his truck and put the "bait money" into the glove box, securing it with a cable. Watson then drove to a pawn shop nearby and went inside, making sure it was clear that his hands were empty so that it was clear to an observer that he left the "bait money" inside his truck.

4

## Standard of Review

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

In reviewing the legal sufficiency of the evidence, we treat direct and circumstantial evidence equally because circumstantial evidence is just as probative as direct evidence in establishing the guilt of a defendant. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence constitutes "direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven." *Taylor v. State*, 684 S.W.2d 682, 684

(Tex. Crim. App. 1984). And it alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Further, the "cumulative force" of all the circumstantial evidence in a case can be sufficient to support a jury finding of guilt beyond a reasonable doubt. *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

## Sufficiency of Evidence

In his sole issue, appellant argues that there is legally insufficient evidence to support his conviction because he could not have "appropriated" the "bait money" from the plain-clothed law enforcement officer's truck because it "was locked with a steel security cable to the truck's dash," which "prevented [appellant] from gaining control of the money."

A person commits the offense of theft if he "unlawfully appropriates property with the intent to deprive the owner of the property." TEX. PENAL CODE ANN. § 31.03(a). "Appropriate," in this context, means "to acquire or otherwise exercise control over property other than real property." *Id.* § 31.01(4)(B). "Appropriation of property is unlawful" if: (1) "it is without the owner's effective consent;" (2) "the property is stolen and the actor appropriates the property knowing it was stolen by another;" or (3) "property in the custody of any law enforcement agency was explicitly represented by any law enforcement agent to the actor as being stolen and the actor appropriates the property believing it was stolen by another." *Id.* § 31.03(b). "[R]emoval of the property from the premises

is not necessary for commission of the offense of theft. Removal of the object from its customary location is sufficient to show such reduction to the control or manual possession as required." *Baker v. State*, 511 S.W.2d 272, 272 (Tex. Crim. App. 1974).[2]

---

[2] *See also Davis v. State*, No. 01-17-00587-CR, 2019 WL 1179429, at *6 (Tex. App.—Houston [1st Dist.] Mar. 14, 2019) (mem. op., not designated for publication) (in "bank jugging" case, holding evidence sufficient to show defendant exercised control over backpack full of money where he removed it from seat of car and pulled through window even though backpack attached to chain); *Willis-Webb v. State*, No. 01-15-00727-CR, 2016 WL 6277423, at *3–4 (Tex. App.—Houston [1st Dist.] Oct. 27, 2016, pet. ref'd) (mem. op., not designated for publication) (holding sufficient evidence to support conviction for unlawful appropriation even though security guards caused defendant to abandon merchandise before leaving store); *Hicks v. State*, No. 12-13-00158-CR, 2014 WL 1922619, at *3 (Tex. App.—Tyler May 14, 2014, no pet.) (mem. op., not designated for publication) (holding although defendant did not leave store with jewelry, he was not entitled to attempted-theft instruction because "the act of carrying away or removing property is not an element of statutory theft"); *Patterson v. State*, No. 09-12-00576-CR, 2014 WL 1778373, at *4 (Tex. App.—Beaumont Apr. 30, 2014, pet. ref'd) (mem. op., not designated for publication) (defendant on trial for theft of copper wire not entitled to attempted-theft instruction because "[w]hen [o]fficer . . . saw [defendant] with the roll of wire in his hand, [defendant] was exercising control over it"); *Ragan v. State*, No. 12-13-00183-CR, 2013 WL 6797734, at *3 (Tex. App.—Tyler Dec. 20, 2013, no pet.) (mem. op., not designated for publication) ("When [defendant] and his codefendant disconnected the transformers, they exercised control over the property, which is consistent with the penal code's definition for 'appropriate.' . . . There is no evidence that if [defendant] was guilty, he was guilty only of 'attempted theft.'"); *Malone v. State*, No. 05-05-01159-CR, 2006 WL 1727727, at *2 (Tex. App.—Dallas June 26, 2006, pet. ref'd) (not designated for publication) (holding defendant not entitled to attempted-theft instruction because he "hooked the trailer to his van and had moved the trailer, although only slightly"); *Cantrell v. State*, No. 05-92-01220-CR, 1994 WL 24386, at *2 (Tex. App.—Dallas Jan. 31, 1994, no pet.) (not designated for publication) ("[T]o have the issue of attempted theft submitted to the jury, the evidence must show that [defendant] intended to take the necklace, but failed"; "[a]lthough [defendant] argues that he never had

Here, appellant argues that he "never acquired the [bank] bag" containing the "bait money" or "exercised control over it" because the "[bank] bag and its contents remained in the firm control of a steel security cable." He further argues that to establish the requisite appropriation in this case, there would need to be some evidence that appellant had managed to remove the bank bag from the security cable. Contrary to appellant's assertions, however, it is undisputed that he broke the window of the plain-clothed law enforcement officer's truck, reached inside the truck, removed the bank bag containing the "bait money" from the truck's glove box, and pulled the bank bag outside of the truck's window. Once appellant realized that the bank bag was attached to a security cable, he dropped it, leaving it hanging from the security cable outside of the truck's window, and fled the scene. That appellant was ultimately thwarted in his efforts to flee the scene with the bank bag of "bait money" is of no consequence to our analysis of the sufficiency of the evidence to support his conviction of theft in this case. *See Westerman v. State*, 161 S.W.2d 95, 103 (Tex. 1942) (holding defendant guilty of offense of theft where he pushed car few blocks down street, but then abandoned it when car would not start because "it was not necessary that the appropriation be consummated or completed"). This is because "asportation—the act of carrying

full possession of the necklace, a temporary deprivation with the requisite intent to permanently deprive sufficiently establishes the crime of theft").

8

away or removing property—is not an element of statutory theft." *Hawkins v. State*, 214 S.W.3d 668, 670 (Tex. App.—Waco 2007, no pet.); *see also* TEX. PENAL CODE ANN. § 31.03(a); *Barnes v. State*, 513 S.W.2d 850, 851 (Tex. Crim. App. 1974) (holding defendant guilty of offense of theft where he entered car and started motor even though he was stopped before driving away). In other words, it is the intent to deprive and not the actual deprivation of the property that informs our analysis. Here, appellant does not argue that the evidence is insufficient to support the intent element of the offense of theft. And any exercise of control over property, other than real property, is an appropriation regardless of the duration of that control. *Palmer v. State*, 471 S.W.3d 569, 571 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Viewing all of the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found that appellant unlawfully appropriated property with the intent to deprive the owner of the property. *See* TEX. PENAL CODE ANN. § 31.03(a). Accordingly, we hold that there is legally sufficient evidence to support appellant's conviction.

We overrule appellant's sole issue.

### Modification of Judgment

The State asserts that there is an error in the trial court's written judgment in that it states in regard to appellant's "[p]lea to [o]ffense" that appellant entered a

plea of "guilty where the record shows appellant entered a plea of "not guilty."

Therefore, the State requests that this Court modify the trial court's judgment to correctly reflect appellant's plea in this case.

"[A]ppellate court[s] ha[ve] the power to correct and reform a trial court judgment 'to make the record speak the truth when [they] ha[ve] the necessary data and information to do so[] or make any appropriate order as the law and nature of the case may require.'" *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet ref'd)). This is true no matter who, or if anyone, has called the matter to the attention of the appellate court. *See French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Dromgoole v. State*, 470 S.W.3d 204, 226 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd); *see also Asberry*, 813 S.W.2d at 529–30 ("The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court.").

Here, the trial court's written judgment does not accurately comport with the record in this case in that it states that appellant pleaded "GUILTY" to the offense of theft. The record, however, reveals that appellant actually pleaded "not guilty."

Accordingly, we modify the trial court's judgment in regard to appellant's "[p]lea to [o]ffense" to reflect that appellant entered a plea of "NOT GUILTY."

*See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993).

## Conclusion

We affirm the judgment of the trial court as modified.


Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).

11